UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:                                                                                    CASE NO:

**NEW TOWNE DEVELOPMENT, LLC**                              **09-10029**

DEBTOR                                                                            CHAPTER 11

**MEMORANDUM OPINION**

*Introduction*

Michael L. Huye, J. David Matthews and Shearwater Communities, L.L.C. (collectively "Petitioning Creditors") filed an involuntary bankruptcy petition against alleged debtor New Towne Development Group, L.L.C. ("New Towne") on January 13, 2009. Shortly afterward Old Towne Development Group, L.L.C. ("Old Towne"), New Towne's principal secured creditor, moved to dismiss or convert the case or alternatively for appointment of a chapter 11 trustee. The court denied Old Towne's motion to dismiss the involuntary chapter 11 petition because as a non-petitioning creditor, it lacked standing.[1] When the alleged debtor did not oppose the involuntary petition, the court ordered relief on March 3, 2009.[2]

Because New Towne is now a debtor, Old Towne's Motion to Dismiss Chapter 11 or Appoint Chapter 11 Trustee or Convert to Chapter 7 (P-6, refiled as P-24), as well as the Motion of Petitioning Creditors to Appoint Chapter 11 Trustee (P-18), now are ripe.

---

[1] Amended Order Denying Motion to Dismiss Case (P-95).

[2] Order for Involuntary Relief (P-89). Because New Towne is now a chapter 11 debtor, issues relating to the propriety of involuntary relief are moot.

*The History of New Towne and the Dispute Leading it to Bankruptcy Court*

New Towne Development Group, L.L.C. is a Louisiana limited liability company formed in 2006.[3] Its members signed an operating agreement dated September 10, 2007[4] contemplating the acquisition and development of real property.[5]

The dispute that culminated in the filing of an involuntary petition relates to control of the debtor, so its membership and management are relevant. New Towne's members are Shearwater Communities, L.L.C. ("Shearwater") (50%), JRJ Development, L.L.C. ("JRJ") (30%) and Welltown Investments, L.L.C. ("Welltown") (20%).[6]

The company's members delegated authority to run the project to a board of managers[7] that Matthews chaired initially.[8] John Engquist, Patrick and Michael Campesi, J. David Matthews and Christopher Mestayer later comprised New Towne's board of managers,[9] though Matthews and Mestayer handled New Towne's day to day affairs.

---

[3] Articles of Organization of New Towne Development Group, L.L.C. dated August 25, 2006 (Exhibit PC-8). According to the initial report included with the articles, the initial managers of New Towne were Christopher Mestayer and David Matthews.

[4] Operating Agreement of New Towne Development Group, L.L.C. (Exhibit OT-3) ("New Towne Operating Agreement").

[5] New Towne Operating Agreement, article 1.3.

[6] Shearwater's members are J. David Matthews and Christopher Mestayer. John M. Engquist is the sole member of JRJ. Welltown's two members are Patrick and Michael Campesi.

[7] New Towne Operating Agreement, article 5.1. The agreement authorizes the board of *managers* upon a majority vote to perform specified actions to operate the company. New Towne Operating Agreement, article 5.2. However other enumerated actions, including approval of a request for additional capital contributions in excess of $500,000, require the affirmative vote of 75% of the company's *members*. New Towne Operating Agreement, article 5.3

[8] New Towne Operating Agreement, article 5.6

[9] New Towne Operating Agreement article 5.1, schedule 5.1.

2

New Towne bought about 420 acres of land in Zachary, Louisiana on September 11, 2007 using financing from BancorpSouth Bank ("BancorpSouth"). It planned to create a traditional neighborhood development to be named *Americana*.[10]

By April 2008, some of New Towne's members decided to end Matthews's association with the project.[11] At an April 18, 2008 meeting New Towne's board of managers voted to revoke Matthews's authority to act for the company.[12] It also terminated him as chair of the board of managers and as project developer.[13]

New Towne's members met August 12, 2008 to discuss a capital call to enable the company to pay expenses that included interest on its debt to BancorpSouth for the land purchase. The payment was due September 9, 2008. Matthews, as representative of Shearwater, was the only member to vote against a $1.2 million capital call.[14] The managers did vote to make a capital contribution of $500,000,[15] but that was not enough to pay between $700,000 and $750,000 in interest coming due on the bank debt.

---

[10] See New Towne Operating Agreement, article 1.4, *Definitions* (defining *project* as the Americana traditional neighborhood development).

[11] John Engquist testified that the managers did not want Matthews as the "face of the project" after they learned among other things that he previously had filed bankruptcy and allowed nearby property he owned to be liened. Engquist insisted that Matthews's earlier misrepresentations about these subjects troubled him and the other managers.

[12] April 18, 2008 Resolution of Board of Managers (Exhibit OT-17).

[13] April 22, 2008 Resolution of Board of Managers (Exhibit OT-18). Because Matthews was continuing to represent himself to engineers and architects as the project developer, on May 8, 2008 the board passed yet another resolution ratifying the first two resolutions. (Exhibit OT-19).

[14] Matthews claimed to own a 51% interest in Shearwater. Thus his vote resulted in a negative vote on Shearwater's behalf, and because Shearwater owns 50% of New Towne, the resolution failed. Matthews and Mestayer dispute the percent of Shearwater each other owns. Mestayer contends that he owns 50% of Shearwater, but Matthews claims Mestayer owns only 49%. Mestayer also disputes Matthews's claim to be Shearwater's sole manager. In May 2008 Matthews and Shearwater sued Mestayer to resolve the ownership dispute in a state court *quo warranto* action. No party offered a copy of the lawsuit into evidence at the hearing, though Dr. Michael Burdine attached copies of a proposed amended petition to his memorandum in support of a motion to quash a subpoena *duces tecum* (P-42). This opinion notes the dispute only to explain events leading to New Towne's bankruptcy: it does not resolve it.

[15] August 12, 2008 Resolution of Board of Managers (Exhibit OT-21).

In early September 2008, Matthews rejected Engquist and the Campesis' offer to buy Matthews's interest in New Towne or to sell him their own interests.[16] After BancorpSouth made demand on New Towne when the company failed to timely pay the accrued interest, Engquist and the Campesis informed Matthews that they were recusing themselves from making decisions regarding possible restructuring of New Towne's loan with the bank due to the conflict arising from their separate interests as guarantors.[17] Engquist and the Campesis subsequently formed Old Towne and through it bought the bank's note.[18] Old Towne then sued to foreclose on its mortgage on the land.[19] New Towne unsuccessfully sued to enjoin the sheriff's sale[20] scheduled for January 14, 2009.

### *The Involuntary Petition*

The Petitioning Creditors filed an involuntary petition January 13, 2009, the day before the scheduled sheriff's sale on New Towne's land.[21] Although Old Towne offered extensive evidence on the nature of the debt held by each of the petitioners and their prepetition dealings with the debtor, the validity of their claims is not relevant to these motions except as noted in this opinion.

---

[16] September 5, 2008 letter from Engquist to Matthews and Mestayer (Exhibit OT-38).

[17] September 17, 2008 letter from Ashley Moore, attorney for Engquist and the Campesis, to Matthews (Exhibit OT-58).

[18] Notarial Act of Assignment of Promissory Note and All Obligations of Security Related Thereto by BancorpSouth Bank to Old Towne Development Group, L.L.C. (Exhibit OT-22).

[19] Verified Petition for Executory Process, *Old Towne Development Group, LLC v. New Towne Development Group, LLC*, Case No. 571,934, 19th Judicial District Court, Parish of East Baton Rouge (Exhibit OT-23).

[20] Petition for Injunction to Enjoin Sheriff's Sale in Executory Proceeding, *Old Towne Development Group, LLC v. New Towne Development Group, LLC*, Case No. 571,934, 19th Judicial District Court, Parish of East Baton Rouge (Exhibit OT-25).

[21] Notice of sheriff's sale (Exhibit OT-24).

## *New Towne's Assets and Debts*

John Engquist, now chairman of the debtor's board of managers, testified that the debtor has eight creditors other than Old Towne.[22] New Towne owes about $95,000 to those creditors, all of which hold unsecured claims. Mr. Engquist also testified that on the petition date the debtor owed about $13,000,000 plus $400,000 in accrued interest on the note then held by Old Towne.

New Towne now has no income, less than $100,000 cash, no assets that are not incidental to ownership of the land, and conducts no business on the property. It has a single contract employee, its bookkeeper.

Malcolm Corcoran, an expert appraiser, first appraised New Towne's unimproved land at $11,690,000 in August 2007. At Matthews's request Mr. Corcoran in October 2008 revisited his report concerning the land, which (along with two more tracts New Towne had acquired) he opined was then worth $24,130,000.[23] However, Corcoran testified at the hearing that changes in the country's economy and bank lending practices since October 2008 had reduced the property's fair market value to between $17 and $18 million, assuming the debtor were given 12 months to market and sell the property. In his opinion the property would bring less in a distress sale.

---

[22] New Towne also owes about $215,000 in property tax on the land. *See* Exhibit OT-34. Engquist testified that the taxes were not paid because the property was in foreclosure. Under Louisiana law, the successful purchaser at the sheriff's sale must pay unpaid *ad valorem* taxes, which are secured by a senior privilege on the immovable property.

[23] October 8, 2008 restricted use appraisal report (Exhibit OT-48 and Exhibit PC-11).

*Analysis*

 *a.* *Summary of Arguments*

Old Towne contends that the evidence supports —

(1) dismissal pursuant to 11 U.S.C. §1112(b) because the involuntary petition was filed in bad faith;

(2) conversion under 11 U.S.C. §1112(b) because the management deadlock leaves the debtor unable to raise money through capital contributions to develop the unimproved land, repay its mortgage debt or have a reasonable prospect for reorganizing under chapter 11;

(3) dismissal under 11 U.S.C. §305 as being in the creditors' best interest; or

(4) appointment of a trustee because New Towne is unable to act for itself as a result of its members' dispute.

The Petitioning Creditors agree that appointment of a trustee is proper because of the management deadlock.  They also argue that a trustee is necessary because New Towne's current managers are depleting the company's cash through gross mismanagement and incompetence, dishonesty, conflicts of interest, self-dealing and had also authorized prepetition transfers that may be avoidable under the Bankruptcy Code.[24]  They oppose dismissal or conversion.

 *b.* *Dismissal or conversion under 11 U.S.C. §1112(b)*

Section 1112(b)(1) provides for dismissal or conversion of a chapter 11 case on motion of a party in interest.  Following BAPCPA's [25] 2005 amendments to the Bankruptcy Code, section 1112(b)(1) is "no longer permissive, but instead mandates conversion or dismissal if the movant establishes exclusive cause, and no unusual circumstances establish that conversion or dismissal

---

[24] Petitioning Creditors' Motion to Appoint Chapter 11 Trustee ¶¶ (5), (6) (P-18).  The Petitioning Creditors produced no evidence supporting these allegations.

[25] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23.

6

is not in the best interest of creditors." *In re Gilroy*, 2008 WL 4531982 at *4 (1st Cir. B.A.P. August 4, 2008).  However, "[w]hether cause exists under §1112(b) and, if so, whether dismissal is appropriate are questions left to the sound discretion of the bankruptcy court." *In re Corinthian LLC*, 2009 WL 363165 at *4 (Bankr. E.D. Pa. February 11, 2009).

Section 1112(b)(4)'s list of potential causes for dismissal or conversion of a chapter 11 case does not include lack of good faith, but the Bankruptcy Code implicitly requires a person filing chapter 11 petition to do so only in good faith. *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).  Indicators of a bad faith filing include: (1) the debtor has only one asset, such as a tract of land; (2) secured creditors' liens encumber the property; (3) the debtor has no employees, little or no cash flow and no source of income to fund a plan; (4) there are few, if any, unsecured creditors and their claims are small; and (5) there has been a foreclosure action on the property and the debtor has not been successful in defending the foreclosure.  *Id*. at 1073.  However, the Fifth Circuit recognized that "[d]etermining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *Id*. at 1072.

Had this case begun as a voluntary chapter 11 reorganization, *Little Creek* would have supported the conclusion that it was not filed in good faith.  However, the case began with an involuntary petition after a dispute among the debtor's members that left the debtor unable to function.  David Matthews, who was facing the loss of any value to his interest in New Towne, controlled two of the three petitioning creditors and was the driving force behind the bankruptcy filing.  Matthews had voted against a capital call to raise money to pay interest on the company's bank debt, and so helped precipitate a default.  The involuntary bankruptcy petition was filed by

the debtor — which by then was not being controlled by the company's members who had joined to form Old Towne — on the eve of a sheriff's sale after Mr. Matthews failed to convince a state court to enjoin the sale. These facts taken together cast doubt on Mr. Matthews's good faith joining in petitioning for chapter 11 relief.

Nonetheless, whether or not the involuntary petition was filed in good faith, "unusual circumstances" within the meaning of 11 U.S.C. §1121(b)(1) support a finding and conclusion that dismissal or conversion is not in the best interests of New Towne or its creditors.

Section 1112(b) does not define unusual circumstances, "but the phrase contemplates conditions that are not common in chapter 11 cases." *In re Pittsfield Weaving Co.*, 393 B.R. 271, 274 (Bankr. D.N.H. 2008), citing *In re Fisher,* 2008 WL 1775123 at *5 (Bankr. D. Mont. Apr.15, 2008). Moreover, "[c]ourts have much discretion in determining whether there are unusual circumstances that weigh against conversion or dismissal." *Id*. at 274-5, citing *In re The 1031 Tax Group, LLC,* 374 B.R. 78, 93 (Bankr.S.D.N.Y.2007) (section 1112(b) "explicitly provides for this discretion where a court is able to identify 'unusual circumstances ... that establish that the requested conversion is not or dismissal is not in the best interests of creditors and the estate' ").

This case presents "conditions that are not common in chapter 11 cases," and are unusual even among involuntary bankruptcies. It has featured fevered activity by the parties since the Petitioning Creditors filed the involuntary petition in January 2009. The motion practice so far has revolved around facts underlying the New Towne and Shearwater members' disputes that have occupied the state courts since Matthews filed a *quo warranto* proceeding in the 19th Judicial District after Mestayer challenged Matthews's ability to act as Shearwater's manager.[26]

---

[26] The state court had not ruled in that action as of the conclusion of the hearing on these matters.

8

However, although these disputes and the challenges to the validity of the Petitioning Creditors' claims were the focus of the evidence at the hearing, the prospect of reorganizing the debtor is a more important consideration in ruling on Old Towne's motion to dismiss or convert.

It is not possible at this early stage of the case to conclude that New Towne has no reasonable prospect for an effective reorganization. The management deadlock left the debtor itself unable to focus on the possibility of reorganization, a process that often does not begin promptly after the order for relief even in a voluntary case.[27] The court did not order relief until March 3, 2009 – only 14 business days before the March 23 hearing on these motions, and for much of the brief period between the petition and hearing the parties were locked in discovery and motion practice. Because of this it also is unlikely that Old Towne or other parties in interest have been able to develop a proposal for reorganizing this debtor.

Moreover, the evidence did not establish that confirming a chapter 11 plan is not feasible. Old Towne holds about $13.4 million in debt secured by land worth between $17 million and $18 million[28] (albeit subject to a claim for *ad valorem* property taxes), even considering the recent national economic downturn. The possibility of equity in New Towne's land creates the prospect that a party in interest could develop a reorganization plan to pay all administrative expenses and also all unsecured claims (including those held by the eight "legitimate" creditors

---

[27] Perhaps in part because of the deadlock, New Towne itself has remained inactive. Its schedules and statement of financial affairs were due March 18, 2009, 15 days after the order for relief. Fed. R. Bankr. P. 1007(a)(2). They had not been filed as of the date of this memorandum opinion. Also, the debtor in possession has not yet retained counsel.

[28] Additionally, Mr. Engquist confirmed that Old Towne does not hold a mortgage on the two adjacent parcels of land New Towne bought after the original purchase and that those parcels were not included in BancorpSouth's collateral. Corcoran's appraisal in October 2008 included these two tracts of land in its total value of $24,130,00. The appraisal does not break out the value of each tract included in the total acreage of the property appraised. However, on page 8 of the appraisal, the purchase prices for the two separately purchased tracts were listed at $85,000 and $345,000. October 8, 2008 restricted use appraisal report (Exhibit OT-48 and Exhibit PC-11).

named in Old Towne's memorandum,[29] none of which appears to be an insider within the meaning of 11 U.S.C. §101(31)). Dismissing the bankruptcy petition and allowing the sheriff's sale to proceed, or converting the case and leaving the panel trustee virtually certain to face a demand for stay relief, would reduce the likelihood of payment of the legitimate unsecured creditors' claims. Moreover, bankruptcy court is the appropriate forum for a party with standing to test the validity of the Petitioning Creditors' claims.

Old Towne argues that conversion or dismissal is appropriate because the management deadlock leaves the debtor currently unable to locate financing to complete the project.[30] Though Mr. Matthews thwarted the debtor's members vote for a capital call to pay accrued interest on the bank loan, no evidence established that any party had tried to obtain other financing to complete the project before the bankruptcy was filed. In any case, a chapter 11 plan need not contemplate completing the project: other types of plans may yield benefit for creditors with unsecured claims.

The evidence supports a finding and conclusion that because of "unusual circumstances," the best interests of the creditors and the estate are not served by dismissing or converting the case.

    *c.       Dismissal under 11 U.S.C. §305*

Section 305(a)(1) allows the court to dismiss a bankruptcy case at any time if "the

---

[29] Post-trial Brief of Old Towne Development Group, L.L.C., p.3 (P-161).

[30] Mr. Engquist could not estimate the cost of completing the *Americana* development though he believed it will total "millions of dollars."

interests of the creditors and the debtor would be better served by such dismissal."  Just as dismissal under §1112(b) is not in the best interests of the creditors or the estate, dismissal under §305 does not best serve either the creditors' or New Towne's interests.

      *d.*      *Appointment of a Trustee*

Before the court ordered relief under 11 U.S.C. §303, its power to appoint an interim chapter 11 trustee was doubtful.  *Compare* 11 U.S.C. §303(g) (providing for appointment of an interim trustee in a chapter 7 case in the "gap" period between the commencement of the case and the order for relief).  Now that chapter 11 relief has been ordered and New Towne is a debtor, the court may order the appointment of a chapter 11 trustee if a party has established a basis for the appointment.  11 U.S.C. §1104(a).

Section 1104(a)(1) requires the court to appoint a chapter 11 trustee if a party in interest proves cause, such as fraud, dishonesty, incompetence, gross mismanagement or a similar cause.  However, "cause can consist of other factors, including an actual conflict of interest."  *In re Cajun Electric Power Co-op, Inc.*, 191 B.R. 659, 661 (M.D. La. 1995), *aff'd, Matter of Cajun Electric Power Co-op, Inc.*, 74 F.3d 599 (5th Cir. 1996).  Evidence of fraud or dishonesty is not necessary for the court to determine that cause exists for the appointment of a trustee under §1104(a)(1).  *Id*. at 662.  Indeed, Old Towne and the Petitioning Creditors agreed that the court should appoint a trustee if it did not dismiss or convert the case.[31]

The evidence supports a finding and conclusion that cause exists to appoint a chapter 11 trustee.  The Shearwater membership dispute effectively has paralyzed New Towne's management, and necessitates installing a neutral third party to operate the debtor unhampered by its members' disagreements.  Another factor supporting the need for a trustee is the self-

---

[31] Old Towne's Motion to Dismiss Chapter 11 or Appoint Chapter 11 Trustee or Convert to Chapter 7 (P-6/24); Petitioning Creditors' Motion to Appoint Chapter 11 Trustee (P-18).

11

imposed recusal of the debtor's members who purchased the bank debt from some aspects of managing the debtor. Specifically, fifty percent of New Towne's membership owns Old Towne, its principal creditor. Engquist and the Campesis have recused themselves from any discussions concerning the debtor's liability on the promissory note that Old Towne acquired from BancorpSouth, in order to protect their interests on the personal guaranties of New Towne's bank debt. Because the mortgage debt is by far the principal consideration in this chapter 11 case, neither Mr. Engquist nor any of the other members of New Towne who guarantied the mortgage debt can participate in the debtor's formulation of a chapter 11 plan providing for that debt. Additionally, by insisting that he is a creditor of New Towne, Mr. Matthews cannot fulfill the responsibilities of managing the debtor in possession.

The debtor in possession has not yet filed schedules or a statement of financial affairs, in part because it does not have counsel. A trustee will retain counsel to fulfill those duties without being hampered by the internal disputes that have left the debtor effectively unable to manage itself.[32]

Finally, even if cause to appoint a chapter 11 trustee under §1104(a)(1) did not exist, the reasons set forth in this opinion support the appointment "in the interests of creditors, any equity holders, and other interests of the estate" under Bankruptcy Code section 1104(a)(2).

    *e.*    *Sanctions*

Old Towne also seeks sanctions against the Petitioning Creditors under 11 U.S.C. §303(i). Section 303(i) only provides for damages if the involuntary petition is dismissed. Sanctions under §303(i) are not appropriate because the court did not dismiss the petition pursuant to 11 U.S.C. §303.

---

[32] Appointing a trustee also terminates the period in which only the debtor has the right to file a plan of reorganization under 11 U.S.C. §1121(b) and so enables other parties in interest to propose a chapter 11 plan.

12

*Conclusion*

In summary, Old Towne's motion to dismiss or convert pursuant to 11 U.S.C. §1112(b) and its motion to dismiss pursuant to 11 U.S.C. §305 will be denied by separate order. The motions of both Old Towne and the Petitioning Creditors for the appointment of a chapter 11 trustee will be granted.

Baton Rouge, Louisiana, April 24, 2009.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE