UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| IN RE: | CASE NO: |
|---|---|
| **NEW TOWNE DEVELOPMENT, LLC** | **09-10029** |
| DEBTOR | CHAPTER 11 |

## MEMORANDUM OPINION

Old Towne Development Group, LLC ("Old Towne"), a secured creditor of debtor New Towne Development, LLC, moved for confirmation of its amended chapter 11 plan dated June 23, 2009 ("Plan").[1] The chapter 11 trustee and creditors J. David Matthews, Michael L. Huye and Shearwater Communities, LLC ("Petitioners")[2] objected to confirmation. The court took the issue of confirmation under advisement after a July 31, 2009 evidentiary hearing.

The sole issue is whether the court can confirm a liquidating plan that includes releases and an injunction of claims against non-debtor parties. Because the Plan cannot release or enjoin claims against non-debtor parties on the record of this case, it cannot be confirmed.

## Background[3]

The debtor is a limited liability company that owns immovable property in Zachary, Louisiana, on which it had planned to create a traditional neighborhood

---

1 P-301.

2 The three filed the involuntary petition that commenced this case.

3 The background of the dispute leading to the chapter 11 filing is set out more fully in *In re New Towne Development, LLC*, 404 B.R. 140 (Bankr. M.D. La. 2009). This opinion assumes the reader's familiarity with those facts.

development. A dispute among the members of New Towne led to a default on its mortgage debt. Later, three of its managers who personally had guarantied the bank debt, John M. Engquist, Michael A. Campesi and Patrick O. Campesi, formed Old Towne, which bought the mortgage note from BancorpSouth Bank. The Petitioners filed the involuntary petition shortly before the sheriff's sale on the property securing the Old Towne note.

Because the debtor is a single asset real estate debtor within the meaning of 11 U.S.C. §101(51B), the time in which a chapter 11 plan can be confirmed is effectively shortened. *See* 11 U.S.C. §362(d)(3).[4] Thus, failure to confirm a plan likely will leave the debtor to face Old Towne's request for stay relief.

**New Towne's Members' Disputes**

Old Towne insists that the release and injunction are indispensable to its plan, so a description of some of the non-bankruptcy litigation to which those provisions are directed is appropriate.

In May 2008, several months before the bankruptcy filing, two of the Petitioners (Matthews and Shearwater) filed a state court *quo warranto* proceeding challenging Christopher Mestayer's[5] authority to act for Shearwater concerning its interest in the debtor.[6] Matthews and Shearwater in April 2009 sued Old Towne and the entities that

---

[4] Bankruptcy Code section 362(d)(3) provides that the stay against single asset real estate can be lifted on request of the secured creditor within 90 days after the order for relief or 30 days after the order determining that the debtor is a single asset real estate debtor, *unless* a plan is proposed that has a reasonable possibility of being confirmed or the debtor commences payments to the secured creditor.

[5] Mestayer and Matthews are members of Shearwater.

[6] "Quo warranto is a writ directing an individual to show by what authority he claims or holds public office, or office in a corporation, or directing a corporation to show by what authority it exercises certain powers. Its purpose is to prevent usurpation of office or of powers." La. Code Civ. P. art. 3901. The debtor is not a party to the *quo warranto* action, though the petition alleges facts relating to management of the

comprise the membership of Old Towne and the debtor, as well as the individuals who are members of those entities.[7] Both lawsuits (collectively "the State Court Suits") make claims that appear to belong to the two plaintiffs independently and claims that may belong to New Towne. Neither action has been resolved.

**Old Towne's Plan**

Old Towne's Plan[8] calls for liquidating the debtor. It provides for the auction sale of all the debtor's non-cash assets.[9] In section 1.62 of the Plan Old Towne designated itself a qualified bidder for the auction,[10] and in section 5.3(b) it specified that its opening bid was $7 million, comprising $210,000 cash and a $6,790,000 credit bid. Old Towne also agreed in sections 3.1(a) and 3.2(a) to subordinate its unsecured deficiency claim to the allowed claims of unsecured creditors for distribution.[11] It contends that its unsecured deficiency claim is approximately $6,000,000.

---

Americana development. In December 2008, Matthews and Shearwater moved for leave to amend its petition to add claims for damages and to include the debtor as a plaintiff, through a derivative action. The amended petition would also join the debtor, John M. Engquist, Michael A. Campesi, Patrick O. Campesi, JRJ Development, LLC, Welltown Development LLC, Old Towne and ABC Insurance Company as defendants. The state court had not ruled on the motion for leave when this case was filed.

[7] The April 2009 lawsuit asserts claims concerning the New Towne Operating Agreement and allegedly wrongful actions taken by and among the managers and members of New Towne. The named defendants are Engquist, the Campesis, JRJ, Welltown, Old Towne and ABC Insurance. Engquist is JRJ's sole member and the Campesis are Welltown's only two members. JRJ, Welltown and Shearwater are the debtor's members. Engquist and the Campesi brothers are Old Towne's members. The debtor is not a party to the April 2009 suit.

[8] Old Towne attached a modified plan as an exhibit to its July 30, 2009 reply (P-371) to the trustee's and Petitioners' confirmation objections. Because it did not separately file the proposed modified plan, the modification is not under consideration.

[9] The trustee has scheduled the auction for August 17, 2009. Trustee's Notice of Public Auction (P-308), Exhibit A.

[10] The trustee's certification filed August 7, 2009 recites that Old Towne is in fact the *only* qualifying bidder (P-394).

[11] Creditors have filed unsecured claims totaling $113,960.71, excluding the claims of insiders and claims to which the trustee has objected.

The Plan includes several releases. First, it releases the trustee, Old Towne and other non-debtor third parties from any debt of any kind "that arose before the Confirmation Date."[12] Confirmation will release the same group from any claims "in any way related to the Assets or this Reorganization …."[13] In addition, the Plan also permanently enjoins all entities from asserting any claim occurring before the confirmation date against the debtor, the trustee, Old Towne, the winning purchaser and other non-debtor parties.[14] Finally, confirmation of the Plan will discharge the debtor.[15]

All impaired classes of claims accepted the Plan.[16]

The trustee and the Petitioners objected to the releases and the injunction.[17] The Petitioners also objected to the proposed transfer of causes of action to the winning bidder,[18] alleged that Old Towne did not propose the plan in good faith (11 U.S.C. §1129(a)(3)), and contended that the Plan was not in the best interest of the creditors (11 U.S.C. §1129(a)(7)).

---

[12] Creditor's Chapter 11 Plan of Reorganization Dated June 23, 2009 Proposed by Old Towne Development Group, LLC ("Plan"), section 8.2 (P-301). See Exhibit 1 in the Appendix to this memorandum opinion.

[13] Plan, section 8.7. See Exhibit 1 in the Appendix.

[14] Plan, section 8.5. See Exhibit 1 in the Appendix.

[15] Plan, section 8.8. See Exhibit 1 in the Appendix. Though Old Towne agreed at the confirmation hearing to delete the provision discharging the debtor, it has not filed into the record a revised plan making that change.

[16] Under 11 U.S.C. §1126(a) only the holder of an *allowed* claim or interest may accept or reject a plan. Because the trustee has objected to Matthews's and Shearwater's claims, Matthews's and Shearwater's claims are not deemed allowed. 11 U.S.C. §502(a). Therefore, their ballots appropriately were not counted.

[17] The trustee at the confirmation hearing agreed to support confirmation provided Old Towne made minor adjustments in the release and injunction provisions in the proposed plan.

[18] Plan, sections 1.3 and 1.67.

**Confirmation Hearing**

Old Towne offered the testimony of four witnesses at the July 31, 2009 confirmation hearing. They were Robert Daigle, an expert in traditional neighborhood development ("TND"); Tom Cook, a real estate appraiser; John Engquist, manager of the debtor and member of Old Towne; and Dwayne Murray, the chapter 11 trustee.

Mr. Daigle testified that the development project New Towne originally had planned was not feasible given the economy. He was unable to project a date for continuing with the traditional neighborhood development, though he believed that it was "well into the future" because the project was "very speculative." Finally, Daigle concluded that the development design materials the debtor acquired before bankruptcy had minimal value.

According to Mr. Cook, the estate's immovable property (which includes a parcel that is not subject to Old Towne's mortgage[19]) was worth $9,725,000, given a year to market the property and close on the sale. He believed that an auction or quick sale of the property would yield 25 to 30% less.

According to Mr. Engquist, the debtor currently has no business operations and no employees. It is not paying any part of Old Towne's mortgage debt. Engquist testified that Old Towne will not agree to any other reorganization plan or propose any plan with terms different from those in its own plan. He also testified that Old Towne will

[19] New Towne owns other nearby property that is not subject to Old Towne's mortgage. It bought an adjacent parcel in May 2008 for $85,000 and another parcel in June 2008 for $350,000. Plan section 1.18 defines the two pieces collectively as the "Clear Property."

subordinate its unsecured claim for the benefit of other unsecured creditors only if the court confirms the June 23 plan.[20]

Finally, chapter 11 trustee Dwayne Murray testified that the debtor had $126,000 in cash and some books and records. He and his counsel had reviewed potential avoidance actions but did not contemplate initiating any. Mr. Murray estimated that chapter 11 administrative expenses total $100,000.

The parties stipulated at the hearing that the Plan complies with 11 U.S.C. §§1129(a)(2), (4-6), (8), (10-13) and (16).

## Analysis

The parties' stipulations leave for resolution only the good faith of the plan proponents, the best interests of the creditors, and whether the Plan's release and injunction provisions are permissible.

### *Old Towne Proposed the Plan in Good Faith*

The evidence established that Old Towne proposed the Plan in good faith and that it satisfies 11 U.S.C. §1129(a)(3). Nothing in the record suggests that Old Towne is not simply exercising its rights as a mortgage creditor. Old Towne easily could have adopted a less contentious (and possibly less costly) strategy of moving for relief from the stay and foreclosing on its collateral without incurring the cost and delay of trying to draft and negotiate a plan. Moreover, Old Towne's proposal to subordinate its substantial potential unsecured deficiency claim to allowed unsecured claims would confer on the class of

[20] Despite this, Old Towne's post-hearing memorandum represented that its members and managers would accept a plan that included the language of either of two modified plans attached as exhibits to the memorandum. Old Towne Development Group, LLC's Memorandum in Support of Release Language in Plan of Reorganization, p. 10. (P-387).

unsecured creditors a benefit that they could not hope to obtain absent Old Towne's voluntary subordination.

The Petitioners essentially argue that Old Towne's proposing a plan that contains a release and injunction of claims against non-debtors is bad faith *per se*. However, the Petitioners have not identified any Fifth Circuit opinion supporting that position.[21]

*The Proposed Plan Satisfies the Best Interest of Creditors Test*

The evidence also established that the Plan is in the best interests of the creditors as required by the Bankruptcy Code.

The "best interest of creditors test" requires that

> With respect to each impaired class of claims or interests—
>
> (A) each holder of a claim or interest of such class—
>
> (i) has accepted the plan; or
>
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . .

11 U.S.C. §1129(a)(7). Here, each holder of a claim eligible to vote in every impaired class has accepted the Plan. Therefore, the Plan satisfies the best interest of creditors test.

*The Plan Releases and Injunction are Impermissible*

The trustee and the Petitioners objected to the breadth of the Plan's release and injunction provisions. The Petitioners also argue that the court lacks jurisdiction to grant

[21] See footnote 25 below.

the releases or impose the injunction because both attempt to bar claims against non-debtor third parties.[22]

Despite his objection, the trustee at the hearing joined with Old Towne in urging confirmation of the Plan for the benefit of the unsecured creditors. He contends that confirming the Plan with the releases and injunction is not inconsistent with the Bankruptcy Code because it will protect the reorganized debtor (and consequently the unsecured creditors) from members' indemnity claims under article 16.3 of the New Towne operating agreement[23] and Louisiana law.[24]

A confirmed plan discharges a debtor that continues in business from any pre-confirmation debt, though the discharge does not affect the liability of any other entity for discharged debt. 11 U.S.C. §1141(d), 11 U.S.C. §524(e). However, New Towne is not entitled to a discharge under the proposed Plan because it provides for liquidating substantially all the debtor's assets; New Towne will not continue to operate post-confirmation; and the debtor, which is not an individual, is not entitled to a chapter 7 discharge. 11 U.S.C. §§1141(d)(3), 727(a)(1). The release of non-debtor parties Old

---

[22] The parties discussed revisions to the release and injunction provisions at the confirmation hearing but found no common ground. A post-trial period to facilitate negotiation to cure the objections also was unfruitful. In fact, Old Towne's proposed revisions make the releases and injunction even broader. For example, Exhibit A to Old Towne's post-trial memorandum contains language extending the release and injunction to even more actions by non-debtors, including a proceeding by Dr. J. Michael Burdine to recover from Bancorp South, as well as a complaint Matthews and Shearwater filed with the Louisiana Disciplinary Board against J. Ashley Moore, a Baton Rouge lawyer. The full text of the proposed changes are set out in the Appendix to this opinion as Exhibits 2 (from exhibit to Old Towne's Reply to Objections to Confirmation of Chapter 11 Trustee and Petitioning Creditors (P- 371)), 3 and 4 (from exhibits to Old Towne's post-hearing Memorandum in Support of Release Language in Plan of Reorganization (P-387)).

[23] Operating Agreement p. 17 (Exhibit Old Towne 16).

[24] *See* La. R.S. 12:1315 (A)(2) (articles of organization for limited liability companies may provide for indemnification of a member or manager for "judgments, settlements, penalties, fines or expenses incurred because he is or was a member or manager").

Towne has proposed in the Plan is especially unusual because it seeks to protect non-debtor parties even though the debtor itself is not entitled to a discharge.

A bankruptcy court as a general rule cannot confirm a chapter 11 plan of reorganization over a creditor's objection if the plan contains a release of a third party guarantor of a debt of the debtor. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir. 1987).

Chapter 11 plans containing blanket releases of third parties from claims held by parties in interest, irrespective of whether the claims are connected to or arise from the chapter 11 cases, have been held invalid. *See e.g. In re Airadigm Communications*, 519 F.3d 640, 657 (7th Cir. 2008) ("'blanket immunity' for all times, all transgressions and all omissions" that affect "matters beyond the jurisdiction of the bankruptcy court or unrelated to the reorganization" are impermissible); *In re Berwick Black Cattle Co.*, 394 B.R. 448, 457 (Bankr. C.D. Ill. 2008) (noting that no court of appeals has supported a "'wide open door' policy" of allowing third-party releases).[25]

So too, plans providing for permanent injunctions that effectively release non-debtor third parties from liability unrelated to the bankruptcy case have been prohibited. *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995) (citing 11 U.S.C. §§105 and 524). Not all injunctions are impermissible, however. The *Zale* court noted that *temporary* injunction of actions against third-parties might be proper "under unusual circumstances," which according to *Zale* include: "1) when the nondebtor and the debtor enjoy such an

---

[25] The Ninth and Tenth Circuits have concluded that non-debtor releases and injunctions are always impermissible. *See In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995); *In re Western Real Estate*, 922 F.2d 592, 600 (10th Cir. 1990). Most of the other circuits, including the Fifth Circuit, have adopted a more flexible approach based on the facts of the case. *See, e.g., In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995); *In re Airadigm Communications, Inc.*, 519 F.3d 640, 656 (7th Cir. 2008); *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005); *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002); *In re Continental Airlines*, 203 F.2d 203, 214 (3d Cir. 2000).

identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *Zale* at 761.

Old Towne's Plan section 8.2 releases the trustee, Old Towne and other non-debtor parties from any debt that arose before the confirmation date. That is inconsistent with *Zale*. Moreover, even the narrowest of the proposed releases in the various plan modifications attached to Old Towne's[26] post-hearing memorandum includes language releasing third parties from claims for "any act or omission occuring during the course of the New Towne Chapter 11 case,"[27] but not limiting the acts or omissions to those connected to the case. This release also is impermissible under *Zale*.

Virtually every chapter 11 plan with a release and injunction similar to those in Old Towne's plan would be confirmable if the existence of an indemnity obligation were sufficient basis for enjoining non-debtors' claims against third party corporate officers, directors and shareholders, and members or managers of limited liability companies. Old Towne points to no Fifth Circuit opinions approving plan releases and injunctions on that basis for *liquidating* debtors. *Compare In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109 (Bankr. N.D. Tex. 2002) (permitting temporary injunction of third party guaranty claims against debtor corporation's president to facilitate reorganization where creditor could obtain relief from the injunction if the debtor defaulted on its plan obligations).

---

[26] Old Towne's Reply to Objections to Confirmation of Chapter 11 Trustee and Petitioning Creditors (P-371) attached the first immaterial modification. See Exhibit 2 in the Appendix. Its post-hearing Memorandum in Support of Release Language in Plan of Reorganization (P-387) attached two other alternative immaterial modifications to the Plan. See Exhibits 3and 4 in the Appendix.

[27] Old Towne Memorandum in Support of Release (P-387), Exhibit B, section 8.2. See Exhibit 4 in the Appendix.

Old Towne urges that the Plan injunction is appropriate under *Zale* due to two "unusual circumstances."

First, Old Towne urges that the identity of interests among New Towne, Old Towne and the principals of each entity means that all of the Petitioners' claims really belong to the debtor. Although Old Towne argues that the State Court Suits make claims that belong to the debtor and therefore are property of its bankruptcy estate under 11 U.S.C. §541, Louisiana law recognizes that *members* of a limited liability may urge claims against other members for breach of their fiduciary duties of diligence, care, judgment and skill.[28] Consequently, some claims in the State Court Suits may not belong to the debtor.[29] Under *Zale* a confirmed plan cannot enjoin those claims.

Second, Old Towne urges that the Plan should be confirmed with the releases and injunction because not doing so will lead to conversion and the loss of the unsecured creditors' benefit resulting from Old Towne's voluntary subordination of its unsecured claim in favor of other unsecured creditors. That reasoning is inconsistent with *Zale*: it would support confirmation of any plan with non-debtor releases or other provisions repugnant to the Bankruptcy Code simply because unsecured creditors would receive more under the plan than they would in a chapter 7 liquidation.

It would indeed be anomalous if the Bankruptcy Code prohibited a plan from discharging a liquidating non-individual debtor that will not remain in business post-confirmation, but allowed that plan effectively to discharge non-debtor third parties by

---

[28] *See* La. R.S. 12:1314(A)(1).

[29] The fact that there are common parties and shared facts between this bankruptcy case and the State Court Suits does not mean that the claims asserted in the State Court Suits are property of the estate. *See In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008). These issues will be addressed in connection with the Petitioners' Motions to Lift Stay to prosecute the claims.

means of releases and permanent injunctions. The holding of *Zale* cannot be stretched to accommodate that outcome on this record.

**Conclusion**

Bankruptcy Code sections 105, 524 and 1141 do not permit the releases and injunction contained in Old Towne's proposed plan. Accordingly, the Plan does not satisfy 11 U.S.C. §1129(a)(1) and will not be confirmed.

Baton Rouge, Louisiana, August 14, 2009.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

# APPENDIX

**Exhibit 1**

P-301 – Old Towne Plan - pages 15 and 16 – sections 8.2 8.5 and 8.7

8.2 Release. On the Closing Date, the Trustee, Old Towne, their predecessors, successors, assigns, representatives, agents, managers, members and attorneys and their respective assets and properties will be discharged and released from any debt, charge, liability, Claim, interest, or other Cause of Action of any kind, nature or description (including, but not limited to, any claim of successor or lender liability) that arose before the Confirmation Date.

8.5 Permanent Injunction. Except as expressly provided for in the Plan, all Entities which hold Claims or Interests, whether Allowed or Disallowed including, but not limited to, the holders of any and all charges, debts, liens, assignments, liabilities, encumbrances, security interests, Claims, contingent or unliquidated, known or unknown, foreseen or unforeseen, existing or hereafter arising, or other Causes of Action (including any claims of successor liability), will be precluded and permanently enjoined from assertion against the Debtor, Trustee, Old Towne or the Winning Purchaser, (if applicable), their respective officers, members, directors, managers, professionals, agents, and any successors and assigns of any of the foregoing and/or the Assets of the Debtor, including without limitation, any Claim based on any document, instrument, judgment, award, act, omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date. Such injunction will also preclude any act, in any manner, at any place whatsoever, which does not conform to or comply with the provisions of the Plan.

8.7 Release on Effective Date. On the Effective Date, Debtor, Old Towne, the Trustee, and the Winning Purchaser, its predecessors, successors, assigns, representatives, agents, managers, members and attorneys will be released and discharged from any Claims or Causes of Action in any way related to the Assets or this Reorganization Case, except as specifically otherwise provided herein.

**Exhibit 2**

P-371 – Old Towne Reply to Confirmation Objections of Trustee and Petitioning Creditors - page 15 of Exhibit A – sections 8.2 and 8.5

8.2 Release. On the Closing Date, the Trustee, Old Towne, their predecessors, successors, assigns, representatives, agents, managers, members and attorneys and their respective assets and properties will be released from any debt, charge, liability, Claim, interest, or other Cause of Action of any kind, nature or description (including, but not limited to, any claim of successor or lender liability) that arose before the Confirmation Date, in any way relating to New Towne, the Involuntary Case or the Plan.

8.5 Permanent Injunction. There shall be an injunction to the full extent allowed under sections 1141 and 524 or the Bankruptcy Code, and all holders of Claims, and equity interests shall be enjoined from pursuing any action on account of or related to any Claim or equity interest through any conduct or proceeding whatsoever, with respect to released claims, and as against any person subject to or deriving rights from the discharge and/or any release or exculpation arising under the Plan and including New Towne, Old Towne, the Trustee and the Winning Purchaser.

**Exhibit 3**

P-387 – Old Towne Memorandum in Support of Release Language - pages 15-17 of Exhibit A – sections 8.2 and 8.5

8.2 Release. Effective as of entry of the Confirmation Order, the Debtor, the Trustee, Old Towne, their predecessors, successors, assigns, representatives, agents, managers, members, and attorneys, and their respective assets and, properties and insurers will be released from any debt, charge, liability, Claim, interest, or other Cause of Action of any kind, nature or description (including, but not limited to, any claim of successor or lender liability) which is owned, whether personally, individually, primarily or derivatively, or asserted or could be asserted by, through or under, the Debtor, its managers, members, members of members, or by their predecessors, successors, assigns, representatives, agents, managers, members, and attorneys or insurers, that arose before the Confirmation Date, in any way relating to New Towne, the Involuntary Case or the Plan, including any claims arising under the Operating Agreement, for beach of any duty (fiduciary or otherwise), tort, contract, fraud, unfair trade practice or legal theory, either for damages, specific performance or otherwise (the "Released Claims"). The release provided for herein shall be construed in the broadest manner possible and shall include, by way of illustration, but not limitation, all of the following as Released Claims:

(a) Any Claim or Cause of Action asserted or which could be asserted in the Shearwater Quo Warranto;

(b) Any Claim or Cause of Action asserted or which could be asserted in the Petition for Damages;

(c) Any Claim or Cause of Action asserted or which could be asserted in that matter entitled "Old Towne Development Group, LLC v. J. David Matthews" United States District Court, Middle District of Louisiana, Civil Action No. 3:09-cv-00224;

(d) Any Claim asserted in this Involuntary Case (other than:(i)the Allowed Claims of Old Towne in Classes 1 and 2, (ii) the Allowed Claim of Kantrow Spaht Weaver and Blitzer, APLC in Class 2 (iii) the Allowed Claims of JRJ Development, LLC and Welltown Investments, LLC in Class 4, (iv) the Allowed Claims of JRJ Development, LLC, Welltown Investments, LLC and Shearwater Communities in Class 5and, (v) the Claims of the Trustee and his counsel, Louis M. Phillips, Ryan J. Richmond and Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P. for Fees and Expenses incurred in connection with the Involuntary Case) including particularly, but without limitation:(w)the Claims of J. David Matthews (Claims # 9 and 12), (x) the Claim of Shearwater Communities, LLC

(Claims # 10 and 13), (y) the Claim of Michael L. Huey (Claim # 11), and(z) the Claim for Allowance of an Administrative Expense filed by, or on behalf of J. David Matthews, Shearwater Communities, LLC and Michael L. Huye, Lawrence R. Anderson, Jr. and the firm of Seale Smith, Zuber & Barnette (Rec. Doc. 232), all of which shall be deemed Disallowed as of the entry of the Confirmation Order;

(e) Any Claim for sanctions filed (Rec. Doc. 164) or to be filed or re-filed by Old Towne, or its Members or Managers, including particularly, but without limitation, the claims asserted or to be reasserted against J. David Matthews, Shearwater Communities, LLC, Michael L. Huye, Lawrence R. Anderson, Jr., Seale Smith, Zuber & Barnette, John P. Wolff, III, Collin LeBlanc, Keogh Cox & Wilson or their partners or associates, and further that all parties affected by this release shall be barred from filing any motion for sanctions against the other or their counsel;

(f) Any Claim asserted or to be asserted against Bancorp South, Old Towne's predecessor, for return the proceeds of a check issued by J. Michael Burdine in the amount of $250,000.00 as a loan to Matthews, which proceeds were contributed by Matthews to Shearwater to fund a capital call and, in turn, contributed by Shearwater to New Towne to fund a capital call and deposited into the demand deposit account of New Towne at Bancorp South;

(g) Any and all disciplinary complaints filed by Matthews and/or Shearwater against Ashley Moore (File No. 0024079, Louisiana Attorney Disciplinary Board), Taylor, Porter, Brooks and Phillips, LLP, and any attorney in that law firm, and further, all parties affected by this release shall be barred from filing any disciplinary complaint against any attorney making an appearance in the Involuntary Case; and

(h) Claims and/or causes of action for any act or omission occurring during the course of the New Towne Chapter 11 Case occurring up to the Effective Date, including acts or omissions in connection with, or arising out of, the filing of the petition, the preparation of motions, memoranda, or other documents, preparation and/or negotiation of the Disclosure Statement and the Plan, the solicitation of votes for and the pursuit of Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan.

Within fifteen (15) days after the Confirmation Order becoming a Final Order, the plaintiff/complainant in the above described actions (numbers 1-7, above) shall, with respect to a lawsuit, move to dismiss the action with prejudice, and, with respect to any disciplinary complaints, notify the Louisiana State Bar Association that the complainant withdraws such complaint and complainant will not cooperate or provide information in such proceedings, except under Subpoena and only upon notifying the subject of the complaint. If the plaintiff/complainant fails

to take such action within the timeframe set forth herein, the defendant may take such action on behalf of the plaintiff/complainant by filing a motion to dismiss, with prejudice, and attaching a copy of this Plan and the Confirmation Order.

8.5 Permanent Injunction. There shall be an injunction to the full extent allowed under sections 1141 and 524 of the Bankruptcy Code, to the extent applicable, and to the extent necessary, pursuant to Section 105 of the Bankruptcy Code, all holders of Claims and Equity Interests shall be enjoined from pursuing any action on account of or related to any Claim or Equity Interest through any conduct or proceeding whatsoever, with respect to Released Claims, and as against any person subject to or deriving rights from the discharge and/or this injunction pursuant to Section 105 of the Bankruptcy Code and/or any release or exculpation arising under the Plan.

**Exhibit 4**

P-387 – Old Towne Memorandum in Support of Release Language - pages 15 and 16 of Exhibit B – sections 8.2, 8.5 and 8.7

8.2 Release. The Trustee and Old Towne, and each of their respective members, managers, officers, employees, advisors, agents, affiliates, and representatives (including any attorneys, accountants, financial advisors, investment bankers and other professionals retained by such persons or entities) shall have no liability to any Holder of any Claim or Equity Interest for any act or omission occurring during the course of the New Towne Chapter 11 Case occurring up to the Effective Date, including acts or omissions in connection with, or arising out of, the filing of the petition, the preparation of motions, memoranda, or other documents, preparation and/or negotiation of the Disclosure Statement and the Plan, the solicitation of votes for and the pursuit of Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court, which shall possess exclusive jurisdiction over all such determinations, and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

8.5 Permanent Injunction. There shall be an injunction to the fullest extent allowed under sections 1141 and 524 of the Bankruptcy Code, to the extent applicable, and to the extent necessary, pursuant to Section 105 of the Bankruptcy Code, and all holders of Claims and Equity Interests shall be enjoined from pursuing any action on account of or related to any Claim or Equity Interest through any conduct or proceeding whatsoever, with respect to released, enjoined or exculpated claims, and as against any person subject to or deriving rights from any release or exculpation arising under the Plan, including Old Towne, the Trustee or the Winning Purchaser.

8.7 Release on Effective Date. The release of Old Towne, the Trustee, and the Winning Purchaser, their predecessors, successors, assigns, representatives, agents, managers, members and attorneys for the Released Claims shall be effective as of the Effective Date, and it is expressly provided herein that the Release of the Released Claims shall not release or have any affect whatsoever upon or concerning any objections to the claims of Matthews, Shearwater or Huye nor any claim for sanctions against Matthews, Shearwater or Huye for instigating this involuntary case, or any claims and causes of action of the Debtor or any member of the Debtor against Matthews, Shearwater or Huye, or their heirs, successors, assigns attorneys agents.