UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO: |
| **NEW TOWNE DEVELOPMENT GROUP, L.L.C.** | **09-10029** |
| DEBTOR | CHAPTER 7 |

## MEMORANDUM OPINION

The involuntary petitioners ("Petitioners")[1] and their counsel, Lawrence R. Anderson of the Seale, Smith, Zuber & Barnette firm, applied for attorney's fees and expenses for filing the involuntary petition that started this case.[2] Chapter 7 trustee Dwayne M. Murray and creditor Old Towne Development Group, L.L.C. oppose any recovery. The court sustains their objections in part.

### Facts[3]

Debtor New Towne Development Group, L.L.C. is a Louisiana limited liability company formed to acquire and develop real property. Disagreements among the debtor's members culminated in a management deadlock and a state court lawsuit followed.[4] Some of New Towne's members then formed Old Towne to buy the real estate lender's note and later sued to

---

[1] The petitioners were Michael L. Huye, J. David Matthews and Shearwater Communities, L.L.C.

[2] The First and Final Application for Allowance of Attorneys Fees and Expenses by Petitioning Creditors' Attorneys (P-232) later was supplemented (P-271) to add the Petitioners as applicants, among other changes. The supplemented application ("Application") is the subject of this opinion.

[3] The background of this case is set out in *In re New Towne Development, LLC,* 404 B.R. 140 (Bankr. M.D. La. 2009) and *In re New Towne Development, LLC,* 410 B.R. 225 (Bankr. M.D. La. 2009).

[4] Matthews and Shearwater filed a *quo warranto* action in state court in May 2008 to challenge another Shearwater member's authority to act on the company's behalf.

foreclose on the mortgage. Petitioners filed the involuntary chapter 11 petition shortly before Old Towne's judicial sale. The court ordered relief when the alleged debtor did not oppose the involuntary petition and, after weeks of contentious motion practice, on April 24, 2009 ordered the appointment of a chapter 11 trustee. The court refused to confirm the plan that Old Towne filed[5] and then on the trustee's motion converted the case to a chapter 7 liquidation. Less than a month later the trustee sold most of the estate's assets to Old Towne, including immovable property not subject to Old Towne's mortgage, in a sale that yielded $310,000 for distribution to unsecured creditors.[6] The court eventually disallowed the claims of two of the Petitioners, J. David Matthews and Shearwater Communities, L.L.C., although it allowed a $16,000 claim for Michael Huye, the third petitioner.[7]

The Application requested $77,558 in fees for services between January 5, 2009 and June 4, 2009, and reimbursement of $2,163.17 in expenses. Although in their post-hearing brief the Petitioners and Anderson sought an additional $3,874 in fees incurred between June 5, 2009 and September 4, 2009, bringing the total fees sought to $81,432,[8] in the same brief the Petitioners and Anderson unilaterally reduced their fee request to $42,207.17.[9]

---

[5]  *In re New Towne Development, LLC,* 410 B.R. 225 (Bankr. M.D. La. 2009).

[6]  September 29, 2009 Order Granting Motion for Sale of Property Free and Clear of Liens and Other Interests (P-526).

[7]  The September 29 and 30, 2009 orders sustaining the trustee's objection to the claims of Matthews and Shearwater are pleading numbers 522, 524, 525 and 539. Huye's claim was allowed by agreement with the Trustee and over Old Towne's objection (P-523).

[8]  Nothing in the record *details* the legal services Anderson provided from June 5, 2009 through September 4, 2009.

[9]  The specific fee reductions were: (a) fees for the motion to appoint trustee reduced by $7,488; (b) fees for opposing Old Towne's motion to dismiss reduced by $13,442; (c) fees for opposing Old Towne's discovery requests reduced by $17,000; and (d) fees for services incurred after the trustee's appointment reduced by $3,458. Post-hearing Brief in Support of Application for Allowance of Attorney Fees and Expenses, p.7 (P-599). The brief did not provide much more detail concerning the fee reductions, such as the dates on which Mr. Anderson rendered the services and the number of hours he reduced for each date of service.

**Analysis**

*1. Administrative Expense Claims Under 11 U.S.C. §§503(b)(3) and (b)(4 ) in General*

The Application seeks reimbursement of attorney's fees and expenses under 11 U.S.C. §503(b)(3)(A) and (D) and §503(b)(4). Section 503(b)(3)(A) and (D) command allowance of administrative expense claims for the

> actual, necessary expenses … incurred by –
>
> (A) a creditor that files a petition under section 303 of this title; [and]
>
> \* \* \* \*
>
> (D) a creditor … in making a substantial contribution in a case under Chapter 9 or 11 of this title.

Although Bankruptcy Code section 503(b)(3) specifically excepts compensation and reimbursement for professional services from the class of expenses allowable under that subsection, section 503(b)(4) allows administrative expense claims for "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D) or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent and the value of such services …."

Section 503(b)(3)(A) "conclusively presumes" that creating a case and bringing assets within the court's jurisdiction is beneficial to creditors and does not require that a petitioning creditor prove "the outcome of the case was more beneficial to creditors than the result that might have obtained had no case been filed."  4 COLLIER ON BANKRUPTCY ¶503.10[2][a] (16th ed. 2009). *See also In re Key Auto Liquidation Center, Inc.*, 384 B.R. 599, 604 (Bankr. N.D. Fla. 2008)  ("The purpose of §§ 503(b)(3)(A) and 503(b)(4) is to reimburse petitioning creditors for the costs associated with successfully filing and prosecuting an involuntary petition – a valuable

3

service that brings the debtor into court so that its assets can be equitably marshaled before they are squandered").

Sections 503(b)(3) and (b)(4) confer administrative expense status on a petitioning creditor's counsel's fees for preparing and filing the involuntary petition, contacting other potential petitioning creditors, researching the legal and factual basis for filing the case, and any litigation surrounding the entry of the order for relief.  *In re Indian Motorcycle Apparel and Accessories Co.*, 174 B.R. 659, 662 (Bankr. D. Mass. 1994).  Though a wide variety of services may fall into this category, it nevertheless is finite: the date of entry of the order for relief is the cut-off for administrative expenses based on the commencement of an involuntary bankruptcy.  *Id.* at 663.

Under section 503(b)(3)(D) a creditor and its counsel in some circumstances may recover fees and expenses incurred *after* entry of an order for relief.  That provision allows a creditor to be reimbursed its expenses for making a substantial contribution to a chapter 11 case.  The Fifth Circuit has not enunciated a definitive rule for determining what constitutes a substantial contribution to a chapter 11 case; it has left that for the bankruptcy courts to decide case-by-case.  *Matter of DP Partners Ltd. Partnership*, 106 F.3d 667, 672 - 73 (5th Cir. 1997).  In general, though, creditor actions that substantially contribute are those that "directly and demonstrably benefit the estate." *Id. at 672*, citing *Lebron v. Mechem Financial, Inc.*, 27 F.3d 937 (3d Cir. 1994).  A substantial contribution means a "contribution that is 'considerable in amount, value or worth.'"  *Id*. at 673, *quoting Webster's Third New International Dictionary* 2280 (4th ed. 1976).  Nor is the creditor's reason for participating in a chapter 11 case dispositive: a "creditor's motive in taking actions that benefit the estate has little relevance" in determining whether the creditor made a substantial contribution meriting reimbursement.  *Id*.

4

*2. Standard for Reasonable Attorneys' Fees*

The Fifth Circuit uses a "lodestar" method for determining attorneys' fees. The calculation begins by multiplying the reasonable number of lawyer hours by the prevailing hourly rate, adjusting the product of those two numbers up or down depending upon the presence or absence of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeson*, 489 U.S. 87, 90, 109 S.Ct. 939, 943, (1989).[10] *Matter of Fender*, 12 F.3d 480, 487 (5th Cir. 1994). The court has considerable discretion in awarding attorneys' fees. *Id.*

*3. Administrative Expense Claim of Petitioners' Counsel*

a. Claim under 11 U.S.C. §§503(b)(3)(A) and (b)(4)

Anderson and his firm apply for $42,207.17 in fees between January 5 and September 4, 2009 and $2,163.17 in expenses for services between January 26 and March 23, 2009.[11]

The case record reinforces the presumption[12] under section 503(b)(3)(A) that the involuntary petition benefitted New Towne's creditors by breaking the pre-petition deadlock in the debtor's management and putting the debtor's assets in the hands of the trustee. Although that move may not have suited Old Towne, it eventually led to the trustee's sale of the unencumbered assets of the estate and produced assets available for distribution to creditors holding unsecured

---

[10] The *Johnson* factors are: (1) time and labor required, (2) novelty and difficulty of the issues, (3) skill required to perform the legal services properly, (4) preclusion of other employment, (5) customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) undesirability of the case, (11) nature and length of the professional relationship with the client, and (12) award in similar cases.

[11] For reasons that are not apparent, the Application seeks reimbursement of expenses only for the period from January 26, 2009 through March 23, 2009.

[12] See page 3, ¶2, above.

claims. The issue is whether the applicants' fees and expenses between January 5, 2009 and the March 3, 2009 order for relief are sufficiently related to the filing of the involuntary case to be allowable.

Section 503(b)(3)(A) contemplates allowing petitioning creditors' charges for attorney time spent performing legal research, reviewing and researching documents, contacting potential creditors and preparing the involuntary petition. Similarly, the section supports allowance of the Petitioners' lawyer's charges for opposing Old Towne's motion to dismiss the involuntary filing.[13] However, the many hours Petitioners' counsel spent reviewing and opposing Old Towne's subpoenas to the Petitioners are not allowable under section 503(b)(3)(A) because those services benefitted only the Petitioners and not the alleged debtor or any other creditors. Nor can the Petitioners recover charges for attorney time spent in connection with their motion to appoint a trustee because that work essentially duplicated relief Old Towne sought through its own motion. Finally, the Petitioners and their counsel cannot recover the cost of transcripts from the "Secretary of State" and "Clerk of Court" because those documents appear to relate only to the state court *quo warranto* and foreclosure actions.[14]

      b.  Claim under 11 U.S.C. §§503(b)(3)(D) and (b)(4)

Attorneys' fees incurred by the Petitioners for services Anderson rendered after March 3, 2009 are allowable under §503(b)(3)(D) *only* if they made a substantial contribution to the case by adding value or worth to the estate. The Petitioners' actions resisting the motion to dismiss

---

[13] Within the first month the involuntary case was pending, Old Towne filed a Motion to Dismiss Chapter 11 Case or Appoint a Chapter 11 Trustee or Convert to Chapter 7 (P-24). The motion urged dismissal of the involuntary petition under 11 U.S.C. §303(h) and dismissal of the case under 11 U.S.C. §§305 and 1112(b). On February 20, 2009, the court denied the motion to dismiss under section 303 (P-82), and scheduled a trial on the remaining claims in the motion. The court eventually ordered the appointment of a chapter 11 trustee instead of dismissing the case. *In re New Towne Development, LLC*, 404 B.R. 140 (Bankr. M.D. La. 2009).

[14] First and Final Application for Allowance of Attorneys Fees and Expenses by Petitioning Creditors' Attorneys, p.21, entries for January 26 and 27, 2009 (P-232).

6

even after the order for relief were substantial contributions within the meaning of the Bankruptcy Code. Consequently, Anderson's fees for opposing Old Towne's motion to dismiss are compensable under section 503(b)(3)(D).

The involuntary bankruptcy petition ended the organizational in-fighting and stopped state court litigation. The pre-petition debtor itself was unable to conduct business as a result of the deadlock and faced imminent foreclosure and loss of most of its assets. The Petitioners' opposition to Old Towne's effort to dismiss the bankruptcy case also helped keep the debtor's assets within the court's jurisdiction for delivery into the hands of a neutral party, the trustee. Later, when the court declined to confirm Old Towne's plan and the case converted to a chapter 7 liquidation, the trustee was able to sell *all* the debtor's assets, including its unencumbered immovable property, netting $310,000 for the benefit of unsecured creditors. Absent bankruptcy, the foreclosure sale would have left the debtor owning an unencumbered piece of immovable property potentially valuable only to Old Towne, with New Towne's management still facing a deadlock and no prospect of an end to the state court litigation.

Old Towne argues that the debtor could (and would) have paid its creditors faster, and at lower cost, had the Petitioners not filed the involuntary case. However the record does not support a finding or conclusion that New Towne would have paid its creditors without a court's intervention.[15] Old Towne unquestionably had no legal obligation to pay New Towne's creditors.

Conversely, no services Anderson rendered *after* the chapter 11 trustee's appointment qualify for payment as substantial contributions under section 503(b)(3)(D). Once the court declined to dismiss the case and ordered appointment of a trustee, the estate and creditors

---

[15] Old Towne *might* have paid some creditors had it needed their services or to protect some members' good will and business relationships.

received no further benefit from the Petitioners' efforts.  The trustee assumed responsibility for the debtor and its assets and Anderson's actions on the Petitioners' behalf opposing plan confirmation and the trustee's sale motion, and responding to claim objections (particularly those designed to preserve Matthews's and Shearwater's state court claims) directly benefited the Petitioners alone.  Those efforts generated at most only indirect benefit to the estate.  That also is true of Petitioners' counsel's services opposing Old Towne's motion for sanctions:[16] those legal services benefitted only the Petitioners and their counsel.

Finally, Anderson's fee application includes charges for many hours dealing with discovery matters both before and after the order for relief up to the trustee's appointment.  They include time opposing and responding to Old Towne's discovery requests, a great deal of it resisting discovery directed to Dr. Michael Burdine, who is not a party in this case or even a member of the debtor.  Those services did not benefit the estate.  Nor did the estate benefit from time Mr. Anderson spent resisting discovery Old Towne directed to the validity of the Petitioners' claims.  After the court denied Old Towne's motion to dismiss, services Anderson rendered relating to the validity of Petitioners' claims no longer made a substantial contribution to the estate.  Therefore Mr. Anderson's fees relating to these discovery matters are not recoverable.

### c. Reasonableness of Anderson's Fees

The fees allowable pursuant to §503(b)(3)(D), as well as those under §503(b)(3)(A), must be reasonable under the *Johnson* guidelines.

---

[16] On April 9, 2009, Old Towne moved for sanctions against the Petitioners, Lawrence Anderson and John Wolff for allegedly filing the involuntary petition in bad faith (P-164).  Old Towne withdrew its sanctions motion on May 5, 2009 (P-211) and has not re-urged it.

Anderson's time records submitted with the Application include numerous entries where time spent on separate tasks was "lumped," a practice this court, like most bankruptcy courts,[17] disapproves.  The practice also runs afoul of Local Rule 2016-1(b)(6)'s requirement that fee applications include a detailed listing of tasks performed and time spent on each task.  The lumping of time entries in Anderson's bill leaves the court unable to determine whether the hours professionals devoted to specific tasks were reasonable and therefore whether they should be compensable under §503(b).  Mr. Anderson also failed to detail the hours he unilaterally reduced, which further complicates review of the time records.

Even though Anderson voluntarily reduced by one-half the time he spent opposing Old Towne's dismissal motion, the court further reduces by one-half the fees for other services where the billing entries for those services were lumped.  Additionally, a reduction of $4,160 is appropriate for time Anderson spent conferring with other parties' counsel, including John Wolf and Collin LeBlanc (counsel for J. David Matthews in the state court litigation).  Apart from these adjustments, application of the *Johnson* factors does not support a further departure from the lodestar calculation in assessing Mr. Anderson's fees.

## Conclusion

The Petitioners and Anderson have established a joint administrative expense claim under 11 U.S.C. §§503(b)(3)(A) and (b)(4) of $10,832 in attorneys' fees and $1227.59 in expenses.

---

[17] *See, e.g., In re Baker*, 2010 WL 153576 at *3 (Bankr. E.D.N.Y. January 11, 2010) (court reduced lumped billing entries by 50%); *In re Charis Hospital, LLC*, 360 B.R. 190, 200 (Bankr. M.D. La. 2007) (fees for lumped billing entries reduced by one-half); *In re Dimas, LLC*, 357 B.R. 563, 580-82 (Bankr. N.D. Cal. 2006) (percentage of fees for "clumped" time entries disallowed); *In re Teraforce Technology Corp.*, 347 B.R. 838, 857 (Bankr. N.D. Tex. 2006) (50% of lumped time entries disallowed).

They also are jointly allowed an administrative expense claim under 11 U.S.C. §§503(b)(3)(D) and (4) of $13,039 in attorneys' fees and $548.58 in expenses.[18]

Baton Rouge, Louisiana, April 9, 2010.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[18] On March 5, 2010, the United States District Court affirmed this court's disallowance of Matthews's and Shearwater's claims, ruled that the Petitioners lacked standing to appeal the order approving the trustee's sale and dismissed their appeal. Ruling on Motion to Dismiss for Lack of Standing and Mootness, *J. David Matthews and Shearwater Communities, LLC v. Dwayne M. Murray, Trustee and Old Towne Development Group, LLC,* Civil Action No. 09-976 (M.D. La.) The trustee on March 23, 2010 with leave of court filed a supplemental objection to the Application based on the district court's ruling (P-629). This court considered the district court's ruling and the trustee's supplemental objection in connection with this memorandum opinion.